IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Club 530, Inc.                          :
                                        :
              v.                        : No. 855 C.D. 2016
                                        : Argued:  March 6, 2017
Pennsylvania Liquor Control Board,      :
              Appellant                 :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE JULIA K. HEARTHWAY, Judge
          HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI                        FILED: March 29, 2017


        The Pennsylvania Liquor Control Board (PLCB) appeals from an order of the Court of Common Pleas of Lackawanna County (trial court) granting reinstatement of Club 530, Inc.'s (Licensee) Restaurant Liquor License R-13112 (License) upon payment of all applicable license fees that would have been payable on an annual basis since the date of revocation.


                              **I.**

        When Licensee acquired the License for the premises located at 526 Lackawanna Avenue, Scranton, Pennsylvania (premises) in 2007, Licensee requested that it be placed in safekeeping pursuant to Section 474.1 of the Liquor

Code.[1]  When the License was placed in safekeeping, PLCB's Bureau of Licensing (Bureau) advised Licensee that the safekeeping period would expire on November 9, 2010.  *See* Section 474.1(b) of the Liquor Code, 47 P.S. § 4–474.1(b).

---

[1] Act of April 12, 1951, P.L. 90, *as amended,* added by Section 21 of the Act of December 9, 2002, P.L. 1653, 47 P.S. § 4–474.1.  While Act 39 of June 8, 2016, P.L. 273, changed some of the relevant language of Section 474.1 of the Liquor Code, all of the underlying facts in this matter occurred prior to Act 39's effective date, August 8, 2016.  At all relevant times, Section 474.1 of the Liquor Code provided, in pertinent part:

(a) A restaurant, eating place retail dispenser, hotel, importing distributor and distributor licensee whose licensed establishment is not in operation for fifteen consecutive days shall return its license for safekeeping with the board no later than at the expiration of the fifteen-day period.  The license may only be reissued from safekeeping in the manner set forth by the board through regulation.

(b) The board may hold the license in safekeeping for a period not to exceed three consecutive years.  Any license remaining in safekeeping for more than three consecutive years shall be immediately revoked by the Bureau of Licensing unless a transfer application or request for reissue from safekeeping has been filed prior to the expiration of the three-year period or unless the board has approved a request to extend the safekeeping for an additional year as set forth in subsection (g). . . .

(c) In the event a transfer application filed prior to the expiration of the three-year period is disapproved by the board, then the license may remain in safekeeping so long as the licensee has submitted and the board has approved a request to extend the safekeeping for an additional year as set forth in subsection (g).  Such request must be submitted within thirty days of the board's decision notwithstanding any appeal filed in the matter; however, the fee set forth in subsection (g) shall be refunded if the board's decision is overturned.

(d) Any period of time in which the licensee allows the license to lapse by not filing a timely license renewal or license validation

**(Footnote continued on next page…)**

2

In the following years, Licensee submitted renewal applications for its License, which were approved by the Bureau. Desiring to take the License out of safekeeping to operate a restaurant at the licensed premises, on October 27, 2010, Licensee submitted an Application for Return of License from Safekeeping (Return Application).[2] (Reproduced Record (R.R.) at 65a.) In response, the Bureau sent a letter acknowledging Licensee's timely Application and advising that it would request an investigation for the premises. The letter stated, "[s]hould the report of investigation disclose that the premises meet all Board requirements and is not ready to be open and operating as a bone fide restaurant, then an application for extension of safekeeping period . . . and a fee of $5000.00 will be

_____

**(continued…)**

> shall be considered time in which the license was held in safekeeping for purposes of this section.
>
> *  *  *
>
> (g)(1) A licensee whose license is subject to this section may, upon written request, apply to the board to allow the license to remain in safekeeping for an additional one year. The written request must be accompanied by a five thousand dollar ($5,000) fee for licenses placed in safekeeping from counties of the first class, second class, second class A, third class and fourth class and a fee of two thousand five hundred dollars ($2,500) for licenses placed in safekeeping from counties of the fifth through eighth classes. The board shall approve the request unless the license or licensee no longer meets the requirements of this act or the board's regulations. . . .

47 P.S. § 4-474.1.

[2] A Certificate of Occupancy was issued for the premises on the same day.

3

required and you will receive a letter advising you of such." (R.R. at 56a.) The letter also advised that Licensee's Return Application "will be held in abeyance" due to a conflict of interest issue in violation of Section 411(e) of the Liquor Code, 47 P.S. § 4-411(e), resulting from Licensee's sole owner, Anthony J. Rinaldi, Sr. also being the "President and CEO of Scranton Life Realty Co. which leases space to Importer License No. I-683 . . . issued to Northern Wine & Spirits, Inc. [(Northern Wine)] at 538 Spruce [Street], Suite #502, Scranton." (R.R. at 56a-57a.) Soon thereafter, Licensee notified the Bureau that the conflict had been resolved.[3]

By letter dated December 22, 2010, the Bureau notified Licensee that at that time it could not approve removing the License from safekeeping because the Bureau investigator's report stated that the conflict issue still existed and a current valid health license was not posted on the premises.[4] The Bureau also notified Licensee that "If an application for extension of safekeeping period is not received within twenty (20) days of the date of this letter, the [L]icense will be revoked by operation of law." (R.R. at 59a.) This letter did not mention that Licensee had a right to appeal. Licensee did not respond to this letter or take any actions to extend safekeeping purportedly because Licensee did not receive it.

---

[3] Licensee notified the Bureau that it resolved the conflict issue by letter dated December 7, 2010. However, because Licensee discovered that the letter was never actually received by the Bureau, Licensee then faxed a copy of the letter on January 10, 2011.

[4] Regarding the conflict issue, the Bureau "noted[ that] an application for correction to license has been received for [Northern Wine's] Importer License. . . . However, a transfer application packet and required fee must be submitted as this is a place to place transfer." (R.R. at 58a.)

4

By letter dated January 25, 2011, later amended,[5] the Bureau informed Licensee that its License was revoked because "the premises was not issued a health license at the time of investigation." (R.R. at 40a.) It did not state as a reason that the License was being revoked because of the conflict issue. The Bureau then stated that Licensee "has the right to request a hearing on this matter, provided the request is submitted in writing and is received within twenty (20) days of the date of this letter." (R.R. at 40a.) Licensee timely appealed.

## II.

Before a hearing examiner, Gary Grochowski (Grochowski), a PLCB licensing investigator, testified that he was assigned to investigate Licensee's Return Application and "upon investigation, the premises met all Board requirements with the exception of having a valid health permit at the time. And that was the last investigation that was done at the premises by myself." (R.R. at 12a.)

William Rinaldi, Licensee's attorney,[6] testified that he did not receive the Bureau's December 22, 2010 letter advising the reasons that the License was not being returned from safekeeping. He stated that the premises had a valid health license in March 2010, but the City of Scranton revoked the health license prior to the Bureau's inspection because the premises needed a certificate of occupancy.

---

[5] The January 25, 2011 letter incorrectly provided that the License expired on November 9, 2011. On March 1, 2011, the Bureau sent an amended letter that corrected the expiration date to November 9, 2010.

[6] In October 2015, William Rinaldi withdrew his appearance on behalf of Licensee as a result of objections by the PLCB.

After renovations were completed and a certificate of occupancy was issued for the premises on October 26, 2010, Licensee submitted its application to take the License out of safekeeping the next day. William Rinaldi also notified the Bureau that the conflict issue was resolved by letter dated December 7, 2010, and he would contact the Bureau every few weeks to see if the conflict issue was resolved. After discovering that the letter was never actually received by the Bureau, he faxed the letter to the Bureau on January 10, 2011.

The hearing examiner filed an opinion recommending the License should not be revoked pursuant to Section 474.1(b) of the Liquor Code because "Licensee properly requested . . . that the [L]icense be reissued out of safekeeping . . . [and] this lack of a valid [health] permit was not the fault of the Licensee. Also, other various miscommunications led to Licensee's unpreparedness." (R.R. at 113a-114a.)

The PLCB, however, rejected this recommendation and issued an order revoking the License because Licensee had adequate notice of what would happen if it did not promptly extend the safekeeping period. Licensee appealed to the trial court, and a *de novo* hearing was held.

**III.**

Before the trial court, Mark Seitzinger (Seitzinger), former Director of the Department of Licensing, Inspections and Permits for the City of Scranton, testified that although he was scheduled to perform a health inspection for Licensee's premises on December 3, 2010, he never actually made this

6

appointment because he had a conflicting doctor's appointment on the same day. Seitzinger explained that it was his responsibility to conduct the health inspection for the premises on that day because "we were kind of left without a health inspector, per se. But as the director of the department, it kind of fell onto me to handle the day-to-day duties of the department." (R.R. at 174a.) Seitzinger then acknowledged that Licensee's premises had a prior health license, and indicated he was not aware of any change that would have affected the issuance of a health license for the premises.

Anthony J. Rinaldi, Sr. testified that in addition to being the sole owner of Licensee, he is also the owner of the Scranton Life Realty Company (Scranton Life), which owns the building where Northern Wine was located, and 500 Lackawanna Development Company (Lackawanna Development), which owns the building where Licensee's premises are located. He testified that after his attorney, William Rinaldi, notified him about the conflict, Northern Wine moved within a month.

Elmo Rinaldi, owner of Northern Wine, testified that his company was located in the Scranton Life Building since 1997, but after being advised of the conflict, he physically moved out of the building by December 7, 2010. However, due to certain complications and conflicting advice that he received from the Bureau, this conflict issue was not resolved until August 2011, when the location of Northern Wine was officially deemed transferred.

William Rinaldi testified that the first time he learned of the conflict with Northern Wine was in late November 2010 during a different PLCB inspection for a different liquor license and property that already had a valid health license. Two weeks later, he met Grochowski to conduct an inspection of the premises. He also scheduled for Seitzinger to conduct a health license inspection on the same day, explaining that "[w]e had done a few [of these arrangements] in the last three years prior to this." (R.R. at 263a.) However, when Seitzinger failed to keep the appointment, Grochowski advised William Rinaldi that "he won't be back until [PLCB] tells him the conflict is resolved." (R.R. at 384a.) Four days later, William Rinaldi sent a letter to the PLCB notifying it that the conflict no longer existed because Northern Wine moved its office. Because a response was never provided by the PLCB, he later faxed the same letter to the PLCB as well. William Rinaldi denied ever receiving the December 22, 2010 Determination Letter.

Concluding that it had discretionary authority to account for a licensee's curative efforts when renewing a liquor license, the trial court reversed the PLCB's order refusing reinstatement of the License because:

> [Licensee] made every good faith effort to successfully reinstate its license. It expended time, energy, and financial resources to address the problems that led to the underlying reasons to deny reinstatement. As for the "conflict" caused by [Northern Wine], the record reflects that immediate action was taken to move its office to a different building. With respect to the lack of a health inspection, we find that [Licensee] took every step possible to renew the health certificate. The failure to do so was simply outside its control. Finally, we find Attorney [William] Rinaldi's testimony that he did not

8

> receive PLCB's correspondence directing payment for safekeeping to be both credible and compelling. . . . It is clear that PLCB was giving [Licensee] and the other Rinaldi Licensees conflicting and confusing directives. Accordingly, we give consideration to the pattern of perplexing and complicated instructions provided by PLCB in determining that [Licensee's] failures were not indicative of abuse of its licensing privilege.

(Trial Court Opinion at 11-12.) Based on those findings, the trial court held that revocation was not warranted and Licensee was entitled to reinstatement of its License upon payment of all applicable license fees that would have been payable on an annual basis since the date of revocation. The trial court also refused to impose annual safekeeping fees for the years following Licensee's appeal from the Adjudication Letter because the License was not actually in "safekeeping" but in jeopardy. This appeal by PLCB followed.[7]

## IV.

### A.

On appeal, the PLCB contends that pursuant to Section 474.1 of the Liquor Code, 47 P.S. § 4–474.1, the trial court lacked discretionary authority to reinstate the License because it was in safekeeping for more than three years without extension, and Licensee failed to obtain a valid health license and resolve the conflict issue prior to the Bureau's investigation of the premises.

---

[7] Our scope of review in a liquor license renewal case is limited to a determination of whether the trial court's findings of fact are supported by substantial evidence and whether the trial court committed an error of law or abused its discretion. *Pennsylvania Liquor Control Board v. Bartosh*, 730 A.2d 1029 (Pa. Cmwlth. 1999).

In appeals arising under Section 464 of the Liquor Code,[8] the trial court may make its own findings and reach its own conclusions based upon those findings even when the evidence it hears is substantially the same as the evidence presented to the PLCB. *Two Sophia's, Inc. v. Pennsylvania Liquor Control Board*, 799 A.2d 917 (Pa. Cmwlth. 2002). While the trial court may modify, sustain or reverse a PLCB decision to deny the license renewal even if there is substantial evidence to support the PLCB's findings, the trial court may do so only where its findings are supported by substantial evidence in the record as a whole. *Id.* at 922 n.5. If the PLCB has discretion to take an action, the trial court can exercise the same discretion under Section 464 of the Code. *U.S.A. Deli, Inc. v. Pennsylvania Liquor Control Board*, 909 A.2d 24 (Pa. Cmwlth. 2006).

Section 474.1(b) of the Liquor Code provides, in pertinent part:

(b) The board may hold the license in safekeeping for a period not to exceed three consecutive years. Any license remaining in safekeeping for more than three consecutive years **shall be immediately revoked** by the Bureau of Licensing **unless** a transfer application or

---

[8] 47 P.S. § 4–464 provides, in part:

The said appeal shall act as a supersedeas unless upon sufficient cause shown the court shall determine otherwise. The court shall hear the application de novo on questions of fact, administrative discretion and such other matters as are involved, at such time as it shall fix, of which notice shall be given to the board. The court shall either sustain or over-rule the action of the board and either order or deny the issuance of a new license or the renewal or transfer of the license or the renewal of an amusement permit to the applicant.

> **request for reissue from safekeeping has been filed prior to the expiration of the three-year period** or unless the board has approved a request to extend the safekeeping for an additional year as set forth in subsection (g). . . .

47 P.S. § 4–474.1(b) (emphasis added).

Section 474.1(b) requires the automatic and mandatory revocation of a liquor license that is held in safekeeping for more than three years "unless a . . . request for reissue from safekeeping has been filed prior to the expiration of the three-year period. . . ." 47 P.S. § 4–474.1(b). When such a request has been made, revocation of the license is no longer automatic. The PLCB recognized as much when it placed the License in "abeyance" for several months while determining whether to return the License from safekeeping.

What was before the trial court was not whether there was an automatic revocation but whether the License should be revoked because Licensee did not successfully complete all the requirements to have the License reissued. Because the trial court determined that Licensee made every good faith effort to successfully reinstate its License but failed to do so for reasons beyond its control, the trial court acted within its discretion not to revoke the License.

**B.**

Even if the trial court properly exercised its discretion in not revoking the License, the PLCB contends that the trial court erred when it reinstated the

11

License rather than returning it to safekeeping and requiring payment of all the attendant fees since 2010 – approximately $35,000.00.

Notwithstanding the trial court's discretionary authority, Section 474.1(a) of the Liquor Code provides:

> (a) A restaurant, eating place retail dispenser, hotel, importing distributor and distributor licensee whose licensed establishment is not in operation for fifteen consecutive days shall return its license for safekeeping with the board no later than at the expiration of the fifteen-day period. **The license may only be reissued from safekeeping in the manner set forth by the board through regulation.**

47 P.S. § 4–474.1(a) (emphasis added.) The PLCB's regulations provide:

> (a) A restaurant, hotel or club catering liquor license or retail dispenser eating place or hotel malt beverage license authorized under the Liquor Code will not be issued, renewed or transferred by the Liquor Control Board for any premises unless the application for the license, renewal or transfer avers that the proper municipal or State authorities have found that the premises to be licensed, or for which an application is filed for a new license or the renewal or transfer of a license, **meet all the sanitary requirements for a public eating place in the municipality where the place to be licensed is operated, as provided by statute, ordinance or regulation and that documentary evidence thereof is, and shall at all times be, displayed on the licensed premises.**

40 Pa. Code § 5.41(a) (emphasis added.)

12

Here, the trial court was bound by the PLCB's regulation prohibiting reissuance of a restaurant liquor license given that the premises still, to this day, fail to meet all sanitary requirements for a public eating place in the municipality – *i.e.*, a valid health license. Until that occurs, the License cannot be taken out of safekeeping and the trial court cannot reinstate the License. That does not mean, however, that the appropriate remedy is to place the License back into safekeeping and to impose annual safekeeping fees for each year the License has been revoked.

A liquor license is either: in safekeeping, which requires annual safekeeping fees; active, which requires renewal and validation fees; or revoked, which obviously has no fee. Prior to revocation, the License was in safekeeping; but when the PLCB revoked the License, it was no longer in safekeeping and Licensee could not request it be taken out of safekeeping to make it active. Just as in *Ball Park's Main Course, Inc. v. Pennsylvania Liquor Control Board*, 641 A.2d 713 (Pa. Cmwlth. 1994) (*en banc*), *overruled in part by Two Sophia's*, 799 A.2d at 919 n.3, where we held that a licensee did not continually have to file renewal applications when an appeal was taken from a PLCB decision denying renewal because there is nothing to renew, there is no requirement here that Licensee pay fees for a license that did not exist. *See also* Section 464 of the Liquor Code, 47 P.S. § 4-464 ("The said appeal shall act as a supersedeas unless upon sufficient cause shown the court shall determine otherwise.").

Given all of the above, we vacate that portion of the trial court's order reinstating the License because Licensee has not shown it has met the requirements to have the License reissued. Accordingly, we remand to the trial court for further

13

remand to the PLCB for Licensee, within 60 days of the date of this decision, to either submit an application for extension of safekeeping period along with the appropriate safekeeping fee, as recently amended,[9] or apply for reissuance and then timely demonstrate that the Licensee's premises is fully in compliance with the PLCB regulations and the Liquor Code with no past fees being due.

_____
DAN PELLEGRINI, Senior Judge

Judge Cosgrove did not participate in the decision in this case.

---

[9] Effective August 8, 2016, annual safekeeping fees for Lackawanna County are $10,000.00 and validation and renewal application fees are $700.00.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Club 530, Inc.                 :
                                      :
            v.               : No. 855 C.D. 2016
                                        :
Pennsylvania Liquor Control Board,  :
                Appellant     :

**O R D E R**

AND NOW, this 29th day of <u>March</u>, 2017, it is hereby ordered that the Court of Common Pleas of Lackawanna County's (trial court) order dated April 26, 2016, is affirmed in part and vacated in part, and this matter is remanded to the trial court for further proceedings consistent with this opinion.

Jurisdiction relinquished.

_____
DAN PELLEGRINI, Senior Judge